Our next case up will be 22-1266 Chung v. Lamb Your honors, I may have to face the court. My name is Karen Hammer and I'm counsel of record. In this matter, I'm a named appellant together with named plaintiff appellant Emily Bosco Chung. I reserve five minutes to rebuttal. We ask this court to reverse and vacate the lower court's section 1927 sanctions order without remaining. Mr. Lamb did not seek appellate review of the lower court's refusal to award fees under its inherent authority. Nor did Mr. Lamb ask this court to affirm on alternative grounds, and so he's waived that relief. So the only issue for review is whether the record Mr. Lamb made qualifies for section 1927 fees as Congress enacted it. Are you assuming that our prior decision where we upheld the finding of sanctionable conduct was not binding on remand? I believe the analysis remains, but the key is that you vacated the order. We vacated the award as to the amount. It's very clear in the decision. You're reading the last sentence and ignoring the rest of the opinion. It's very clear in that decision that the appellate court said that the district court properly found sanctionable conduct. You can make all the faces you want, but you should proceed to the rest of your argument. Okay, fair enough, but I will say that typically when the court issues its order, it makes sure to put exactly what's ordering there. And it did say there's never the word affirm. It's not used. And I understand you don't agree with me, but of course I need to make that point. That's all. Isn't the only issue here whether the amount awarded is a good fit for the violations that we previously found? That's inadequate. That's totally inadequate, so I'm glad to move to that point is well taken. That the record made here doesn't also, again, does not fit what Section 1927 requires, despite the clear direction of this court. So Mr. Lamb filed an initial motion and two renewed motions, so the renewed motions made a renewed record. I can see that I'm starting to spring back into the vacating idea, so let me shift gears with you here. The key is that this court told Mr. Lamb and Judge Domenico exactly what it needed to do to establish the amount of fees, and that was to show the extent of multiplicity and the amount of excess fees, and that did not happen. Let me focus you maybe on the first area that we're looking at is the fees that were awarded for the motion to strike affirmative defenses. Why don't you start there? Sure. The motion to strike affirmative defenses, the prior ruling was that the part of, it wasn't the entire motion to strike that was problematic. It was moving to strike one affirmative defense, and that was the real party interest defense. However, at the time, the only real party interest defense they had articulated, including their answer that we were seeking a strike, was the idea that Mr. Lamb only lied to the court, and that that was not, and that Ms. Lamb was not the real party because Mr. Lamb didn't, excuse me, Ms. Bosco-Chen wasn't the real party because Mr. Lamb didn't lie directly to her, and so Judge Daniel had already examined that argument on a motion to dismiss, and denied it. You're talking about, I think the motion to strike affirmative defenses was your motion to strike the affirmative defense that Ms. Chung was not the real party in interest. Correct. But it was very specific. It wasn't just a generalized real party interest defense. It says to the extent that the statements were not made directly to her, and that tied directly back to what Judge Daniel had already decided. So at that point, we had no knowledge whatsoever. Even years later, Mr. Hardy wasn't able to identify what his issue was as a real party interest. Well, as I understand the argument, there were 17 affirmative defenses, and I think what you argued on appeal is that only one of them was found, only one part of your motion to strike was found sanctionable, so you shouldn't be able to get all of the fees. Somehow you should break it up and only get the amount spent defending against your motion to strike one affirmative defense. Is that accurate? It is accurate because it's the excess fees that we're talking about. Okay, then address that. That was my understanding too, but I couldn't fit that with what you were saying. So the main thrust of what was happening in the answer that was filed is that the FDCPA, the Fair Debt Collection Practices Act claim, was being treated as a tort. It's not a tort claim. It's very different. And so we asked to strike a bunch of things that may seem unseemly, but the judge found that one of them, in retrospect, he had a difficulty with that. And that one, the question is, what excess fees were caused by that? That's what potentially multiplied proceedings. And as I understand it, the billing for that is broken up in two entries. One is 5.3 hours responding to the motions to strike defenses 1 through 11, which would include the sanctionable defense, right? And the second entry was for the rest, and it would not include the sanctionable defense. Correct? Off the top of my head, I can't respond to that, but if it's possible to break it up in that way. We're not trying to, like, if there are excess fees caused by my unreasonably and vexatiously multiplying proceedings, so be it. What I'm saying, though, is this record doesn't show that, and I don't believe there are facts that show that. I've tried very hard. Facts that show what? There are facts that show that there is an excess multiplier fees. They responded to the whole motion to strike, and it not included the real card in interest. As you said, I think it's 17. So had I done 16 as 17, they still would have had, it appears from the record, exactly the same fees. The reason this could have been solved had Mr. Hardy solved it in his affidavit. I think that's the clear point, is that's the place where, that's what attorney applicator did this for. So what Mr. Hardy said in his affidavit was that these were reasonable and necessary in defense of litigation, and this was after the court had already said, we need to see multiplicity, we need to see excess fees. So the proper fix for that, if you want to stick with the same billing records, is that Mr. Hardy says in his affidavit, these fees we're requesting are excess fees caused by Ms. Hammers unreasonably and vexatiously multiplying proceedings. And he didn't do that, and I believe, you know, he didn't. What did you say in response to that claim for the attorney fees for all the work done in response to your motion to strike? What did you argue to the district court regarding the amount of the fees? Did you make the argument there that Judge McHugh made for you here? What I argued was exactly what Mr. Lamb asked for. So he asked for fees for striking the real party of interest defense. What happened is this kept going back and forth, so by the time it came to Judge Domenico on the third round, which is the second motion for fees, Mr. Judge Domenico phrased it differently, but the request has always been for fees related to... What did you argue? That's what I argued. I argued that there wasn't a request for those broader fees, that it didn't match the request, and regardless... You argued that the fees requested did not match his claim for vexatious multiplicity of work. Right, but the only thing that Mr. Lamb did claim was vexatious and unreasonable. Clearly, he thought it was vexatious and unreasonable. I'm trying very hard not to, like, you know, step back from that because I hear that... Well, the district court thought so and so did we. That's what I'm saying. Yeah, exactly. So I really want to be clear. I'm not trying to, like, step back from that. Okay, turning next to the next sanctionable conduct, which is the objections to Mr. Lamb's motion to disqualify, that's a 17.3 entry of hours. That seems all directly related to an activity that the district court found was vexatious. So I'm not sure what your objection is to that 17.3. The record doesn't show that that's what Judge Daniel or Judge Domenico was concerned about. The actual motion to disqualify said that I would be a necessary witness, and therefore that's the bulk of the motion to disqualify. I would be a necessary witness, and therefore I could not participate and needed to be disqualified. And so the bulk of what was the expenses was addressing that, my addressing that, and also addressing, of course, you know... So if we were to agree with the district court that that entire objection to the motion to disqualify was vexatious, the entire award should be approved. Well, so it's more complex than that, Your Honor. First, there's unreasonably vexatious conduct, right? And what Congress says is not just all unreasonable and vexatious conduct. And God help us, we should not, any of us, be engaging in unreasonable and vexatious conduct, right? So I take that to heart. While I disagree, good cautionary note. Let's, you know, try something new. Okay, but the standard Congress set was, does it unreasonably and vexatiously multiply proceedings? And the judge said that the motion was improper. So all the expenses incurred in response to that motion were the result of vexatious and multiplicitous, whatever the language is. And you should have to pay for that. What's wrong with that argument? What's wrong with that argument is that this court already rejected it the last time. They didn't do anything significantly different to explain more about the excess. Like I said, the affidavit was changed to now refer to expenses reasonable and necessary in defense of litigation. But they don't actually talk about the excess. And when Mr. Lamb does talk about the excess, the excess he's talking about is that the entire case should not have been filed against him. And so when, you know, it says no, multiplication of proceedings, you have to have— Yeah, so we said be more precise. And the district court says that particular motion was unjustified. In its entirety. I'm paraphrasing, yes. And so therefore you should pay for the expense incurred in responding to it. So he has to exercise his discretion by looking at the record and applying the law. So there's no citation to the record that shows what he's talking about. He said unreasonable vexations. He didn't talk about multiplying proceedings when he used the language. So they substituted some new language. Let me interrupt you because you're about to run out of time. And I have questions about the deposition of Ms. Bosco. It's a little confusing. It looks like when you first were in the district court's view being obstreperous in setting the deposition, the district court awarded fees at that time for those expenses. Exactly. And so now we're talking about fees not including the taking of the deposition, but still for scheduling the deposition. And apparently you filed a motion to compel Mr. Lamb to proceed with the deposition on a certain date when he was trying to reschedule it. And the district court decided that was inappropriate and awarded fees for that. Am I correct on what happened? The district court decided that I was still trying to delay. And again, that record is made. And I'm not asking you to write it. I'm trying to be very clear. I understand. You've got limited time, so don't. Right. So that record was made. But the actual record, when you look at the billings, and this is where we get to the rubber meets the road, excess fees. You look at the record and say, OK, which is excess. When you look at the record, they're charging for their seeking to delay the deposition. And it was very important to us to be clear, we are not trying to delay this deposition. You've got co-counsel. Let's bring it on. I mean, it was very important to us to be clear about that. Well, it's about trying to get the things scheduled and taken. And so, I mean, if you're just being difficult, whether it's because you won't let them change a date when a conflict comes up, or if you won't let them schedule it in the first place, they can all be part of a vexatious and obstreperous litigation tactic. That's conceivable, but that's not what happened in these circumstances. Totally conceivable. Not what the record here shows. Judge Hartz, could I just ask one question? Could you explain your argument that the fees awarded here were not incurred? Yes. There's law of the case here. The whole idea of whether I engaged in deceitful conduct was about whether it was appropriate for me to say that, to bring a case in the name of Ms. Bosco Chung when she still retained interest, financial interest, right? So that's what it is. And that had been branded, and I do care about these things, but that had been branded deceitful. So if it's deceitful, if it's deceitful for me to say an FDCPA claim is not a tort, an FDCPA claim is made to defend a consumer, the consumer still had a financial interest, I brought a claim in the name of that consumer, right? That's exactly parallel to what happened here. So the entire time that they were pursuing me for fees, they kept saying, Mr. Landman incurred these fees, Mr. Landman incurred these fees. Every single place. There's not a single place where they say, you made sure I incurred these fees. Now, that's the law of the case. I didn't like it whenever it was applied to me. I'm not trying to stake my career on that, but if it applies to the goose, it applies to the gander. If it was deceitful, then they need to make the record that they asked for. And they said, Mr. Landman incurred fees, and they had an opportunity, they had an opportunity on reply to fix that. Instead of being defensive, they could have said, do whatever.  Okay, thank you so much. Mr. Hardy. Thank you, Your Honor. May it please this court. Mr. Landman, whose law firm requested this court affirm the order of the district court awarding fees against Ms. Hamlin. This case is now on its, the issue on this now fourth appeal is fairly narrow. The proper amount of attorneys fees to be awarded because of Ms. Hammer's previously determined sanctionable conduct under 28 U.S.C. 1927. On review, this court applies abuse of discretion standard of review. This court has previously articulated this standard in its prior order of judgment in a previous appeal. Why don't you address what seems to be her strongest argument that she filed a motion to strike with 16 issues. And only one of those issues was found to be sanctionable. But the attorney fees awarded to you encompass all the work in response to that motion to strike. Surely not all the time on the motion was spent on the one sanctionable part of the motion to strike. Why should you get full attorney fees? Because if you look at the motion, Your Honor, the argument made by Ms. Hammer is a lot broader than each individual affirmative defense. Ms. Hammer even articulated a moment ago that her argument was under the Fair Debt Collection Practices Act, Mr. Landman had no proper affirmative defenses. Obviously she knew that at least one, the real party of interest affirmative defense was appropriate. She had the information and she knew about the letter that she had to disclose. She knew that she was the real party of interest. And in any event, Your Honor, she filed that motion to strike, broadly saying that no affirmative defenses were correct. So let's look at your response, though. Was all of your response directed to the real party of interest issue? No, but a majority of it was, Your Honor. A majority of the response addressed the argument that under the Fair Debt Collection Practices Act, you could have common law affirmative defenses, including real party of interest. That was the major premise of the response that then went into the individual affirmative defenses. We should not get hands-frump for years later, Your Honor, five, six years, seven years after that, to be able to tease out incrementally what attorneys specifically addressed, the real party of interest affirmative defense versus all of the other issues that were raised. Well, but judge can make a, to the extent that it can't be precisely measured, you've got a good argument that you shouldn't have to precisely measure it. But surely there's a ballpark, and 100% is not the right number. Maybe 80%, maybe 60%, but can't you look at that motion? Can't the judge look at that motion and make a ballpark estimate of what it should be? The district court certainly did abuse its discretion in allowing all of those fees. And on the renewed motion for fees, we laid our basis for our position that they were incurred because of. Ms. Hammer, on her response, is given that opportunity to do exactly that, Your Honor. Identify, because she participated in this process, to say, well, here's the response. And only 20% go to that issue, or 30%, or 80%. Instead, her argument and response was, we don't get any of it. So therefore, the district court is limited. OK, so the argument, I said the argument that Judge McHugh made for her, was not made to the district court? That's correct, Your Honor. Instead, the argument is, we don't get any of the attorneys fees, given that the district court is within its discretion to make a determination. And without her articulating what that percentage should be, our argument is, because of her sanctionable conduct, we are entitled to the full amount. Thank you. Can I ask you about an issue that I'm not sure we've talked about yet this morning? The district court reduced the hours by a percentage to calculate the reasonable fee for discovery costs associated with obtaining the engagement letter. So I suppose, going back to the previous discussion, I suppose the court could have done that on the motion to strike. But be that as it may, is there authority for the court to do something like that on the discovery costs on the engagement letter? And to clarify, Your Honor, we did that. We reduced the amount of time due to the discovery issues to 20%. That was based upon our suggestion, not the district court's. Again, there was no response to that as that being inappropriate or appropriate. So the district court's left with nothing else but our argument that 20% is appropriate. Now, on that issue, unlike the motion to strike affirmative offenses, we could estimate what that percentage was taking a look at the various discovery issues that were being raised. And our best estimate years later, not knowing at the time what was going on in terms of the conduct, was that 20%. So that was something that we suggested to the court as a fair determination looking back in hindsight as to the issues that were presented at that time. All right. But you could have done that with the motion to strike, too, couldn't you? Arguably, you could have. But, Your Honor, I think there needs to be an argument made that, no, 20% is more accurate, 70%, 80%. But when we argue, certainly our position is, look, based upon the omnibus argument made by Ms. Hamrick that you don't get any affirmative offenses, well, she knows that's not accurate. And making us incur the fees to address that, and the real party of interest is part and parcel of that larger omnibus argument, 100% of that response is appropriate. So with respect to discovery, are you saying that you looked at all your discovery costs and said 20% was caused by her impropriety? Is that how you came to that? Because there was one aspect of it, I think Judge McHugh was alluding to this, was there was a motion that you filed for an extension of time for a deposition. And that doesn't look like something that would have been filed in response to the misconduct that the court found. Was that just encompassed within the knocking 80% off? Yes, Your Honor. And I'm looking at the spreadsheet now. And that was the purpose, to provide the spreadsheets under the four sanctionable conducts that the district court and this court identified, was to be line item about it, to identify it. And I went through each entry and tried to make the best determination I could, years after the fact, of what would be appropriate applying the 1927 statute. But then after that, if you did identify all that you thought was appropriate, then you knocked off 80% from that? Or, no? No, Your Honor. I think of everything on the spreadsheet, which is the Exhibit A3, is all of the discovery issues. But to give an example, a motion to compel it to bring up five issues, only one of which was the issue about the real part and interest of discovery of the engagement letter. What about specifically, then, the motion for additional time for discovery? Ms. Fosco. I think that's the one, yes. As I sit here today, I would imagine that out of that 100%, it has been reduced by 80% to leave 20%, is what we're asking for all of the issues relating specifically to the real part and interest, lack of production of the engagement letter. But with respect to the deposition of Ms. Fosco, you were already awarded fees for the shenanigans that went on before you could get it scheduled. And didn't ask for fees after our first opinion for taking that deposition. And now the only fees we're looking at are when you tried to reschedule and Ms. Hammer filed a motion to compel you to take it on the date it had originally been scheduled. Am I understanding that correctly? I don't believe so, Your Honor. And I just want to make sure I understand your question, so I don't want to answer a different question. Well, it looks like the only things that are awarded in this most recent award with respect to Ms. Fosco's deposition is defending against the motion to compel the deposition to go forward on the date that was set after the original sanctions were entered. I'm looking at the spreadsheet, Your Honor. And as I understand it, there's more entries than just that motion to compel. It would say September 9th, 2016. There's a telephone. Entry for drafting motion for extension to take plaintiff's deposition. And at least two of us are having trouble explaining how that was justified by any misconduct by the plaintiff. I cannot answer that question as I stand here right now as to that particular entry on the extension of time. I was not counsel's record at that time, even though I did appear later in the case. I do not recall what that specific entry is. But the record shows there were sanctions for the initial problem with scheduling the deposition, and there was an award. The district court invited a motion for attorney's fees, and attorney's fees were awarded for the difficulty of setting the deposition in the first instance. And if you look at the dates, this is for after that point. So it's a little confusing to me. Understood, Your Honor. And I think this is exactly why, in the response to the motion for sanctions, the other side is responsible for articulating a basis of what issues they find with the request. So that in a reply, Mr. Wham has given the opportunity to address some of the positions that this panel is now raising. Unfortunately, instead, in the response, they shouldn't get anything. And the district court is left with reviewing the briefing and making a decision. Certainly, the district court didn't abuse its discretion in taking our argument. And in the net category, Your Honor, it's $927.67. I'm not saying it's not a material sum, but in the grand scheme of things, it's less than $1,000. If she wants to articulate why that's inappropriate, she certainly had the opportunity for the district, but she did not. Seeing that I have no more minute, I wanted to address a question that Judge Matheson raised about the insurance issue. Mr. Lamb had the foresight to have legal malpractice insurance. He certainly shouldn't be penalized for having that foresight. And it would serve as somewhat of a perverse incentive if you had disclosed insurance, yet the other side knew that now $1,927 wouldn't apply because those for attorneys fees aren't actually incurred by the client. Instead, the fact that you have insurance or not is a non-issue as to the ability to recover an award under $1,927. If we affirm the district court's decision to strike the SIR reply brief, is this issue even before us? I'm glad you asked that question, Your Honor. No, it would not be. And it certainly was in the district court's—it did not abuse its discretion in striking the SIR reply. The SIR reply was not even filed with a motion for leave to file a SIR reply. It was just filed—lastly, the response was 8, 9, 10 pages long. The SIR reply was 20-plus pages long. I think it was 30 pages long. It was just a self-imposed, granted extension of time that the district court had every reason to strike. For those reasons, we would request that this court affirm the award of attorney's fees in favor of Mr. Lane. Thank you. Thank you. Thank you, counsel. Cases submitted—oh, you had a little time left, didn't you? I don't think so. I think so. Okay. Cases submitted. Counsel are excused.